THOMAS *v.* NEW YORK & G. L. RY. CO. *et al.*

*(Supreme Court, General Term, First Department.   June 29, 1892.)*

1. RAILROAD BONDS—ACTION FOR ACCOUNTING—PLEADING.

Railroad mortgage bonds, drawing interest payable semiannually at a certain rate, provided that "no more interest shall be payable by virtue hereof than shall be certified by a vote of a majority of the board of directors" to have been earned during the preceding six months, and that "in default of such certificate no interest shall be payable." *Held,* in an action for an accounting brought by a holder of such bonds, after default in the payment of interest, that the complaint must allege either that the certificate provided for in the bonds was made, or that it was unreasonably refused after a request therefor.

2. SAME—AVERMENT OF CONCLUSIONS.

In an action for an accounting by a holder of railroad bonds, which provided that the earnings of the railroad company "over and above all expenses, including necessary repairs," should be applied to the payment of interest, the complaint alleged that the railroad company "wrongfully and improvidently" incurred unnecessary expenses, which it "wrongfully" paid out of the earnings properly applicable to the payment of interest; that the directors used a large part of such money in "rebuilding" the railway, and in "building" new railway and structures, which were not necessary for the maintenance and operation of the railway; and that the railroad company "improvidently" leased a railroad which it operated at a loss. *Held,* such allegations were mere conclusions of law and opinions of plaintiff; and the complaint was defective in not alleging facts so that the court could determine whether the work done could be considered "necessary repairs," or whether any of the acts were done in bad faith or in excess of authority.

Appeal from special term, New York county.

Action by G. Weld Thomas, who sues as well in behalf of other bondholders, against the New York & Greenwood Lake Railway Company, Abram S. Hewitt, John King, and others, to require the defendants to account for all income and earnings of the defendant railway company, and pay the amount into the hands of a special receiver to be appointed by the court, to be disposed of under direction of the court for the benefit of the plaintiff and all other *bona fide* holders of income bonds of said railway company. From final judgment on demurrers by the above-named defendants, dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Oliver P. Buel,* for appellant.  *Buchanan & Steele* and *Cortlandt Parker, Jr.,* (*Cortland Parker* and *Charles Steele,* of counsel,) for respondents.

ANDREWS, J.  The complaint alleges that the defendant is a New Jersey corporation; that on November 30, 1878, it issued first mortgage income bonds to the amount of $900,000, and that on the same day it issued second mortgage income bonds to the amount of $1,800,000; that the principal of each of said bonds was payable 30 years after the date thereof, and interest was also payable at 6 per cent. per annum, on the 1st days of April and October, out of the earnings of said company; that a large portion of such bonds were sold; that the plaintiff is the owner and holder of five bonds of each class, and that he represents other holders of said first and second mortgage income bonds to the aggregate amount of $425,000; that no interest has ever been paid on any of said bonds; that each of said bonds contained the following proviso: "Provided, always, nevertheless, that no more interest shall be payable by virtue hereof than shall be certified by a vote of a majority of the board of directors for the time being to have been by said corporation earned over and above all expenses, including necessary repairs, during the six months ending one month before such time fixed for such half-yearly payments, or theretofore to have accumulated during the current year, so as altogether to make enough to pay at the rate of six per cent. per annum, and in default of such certificates no interest shall be payable;" that the defendant railway, for many years past and in each of said years, has earned enough money, over and above its operating expenses, including necessary repairs,

and including all expenses properly chargeable against or payable out of gross earnings, to pay said interest in full at the rate of six per cent. per annum on both said classes of bonds; that the defendant railway company has, nevertheless, wrongfully neglected and refused to pay said interest, or any part thereof, and the board of directors have wrongfully neglected and refused to certify that said interest, or that any interest whatever, has at any time been earned over and above said expenses; that said defendant company has, through its directors, wrongfully and improvidently incurred great and unnecessary expenses, which they have wrongfully charged against and paid out of the earnings of said defendant railway company, properly applicable to the payment of interest, and thereby at all times wrongfully prevented the accumulation of a fund to pay said interest; that said directors used and appropriated a large part of said moneys to rebuilding the railway of the defendant company, and to building new railway and structures, and that such rebuilding and such building were not necessary for the maintenance and operation of the defendants' railway; that the defendant railway company wrongfully charged the moneys so used and appropriated as expenses against its gross earnings; that the defendant railway company also improvidently leased the railroad known as the "Watchung Railroad," and operated said road at a loss, and thereby prevented the accumulation and appropriation of money to pay such interest; that the defendant Hewitt is president and director of the defendant railway, and that the defendant King is president of the Erie Railroad, and a director of the defendant road, and that the defendant road has been leased to the Erie Railroad and operated by it; that said defendants Hewitt and King participated and aided in such wrongful neglect and refusal, and that the same defendants consented to or procured moneys expended in the manner aforesaid to be charged as expenses against gross earnings.    The complaint demands judgment that the defendants, other than the defendant trustees, account for all income and earnings of the defendant railway company; and that the defendants, other than the defendant trustees, pay the amount of said net earnings into the hands of a special receiver to be appointed by the court, to be disposed of under the direction of the court for the benefit of the plaintiff and all other *bona fide* holders of such income bonds.    The defendant Hewitt and the defendant railway company joined in a demurrer to the complaint on various grounds, and, among others, that it did not state facts which constituted a cause of action; and the defendant King also demurred separately upon similar grounds.    The special term sustained the demurrers, and final judgment was entered dismissing the complaint, with costs, and from that judgment this appeal is taken.

The special term placed its decision upon the ground that, if interest was due to the plaintiff upon the bond held by him, he had a cause of action at law against the defendant corporation, but that no relation existed between the plaintiff and the defendants which entitled him to a judgment compelling the defendants to account in a court of equity.    We do not consider it necessary to determine at the present time whether the grounds upon which the special term placed its decision were well founded, because we think the judgment should be sustained upon other grounds.

1. The plaintiff cannot maintain either an action at law or an action in equity, unless a majority of the directors of the defendant railway have previously given the certificate provided for in the bonds themselves, or unless such certificate has been unreasonably withheld; and the complaint in either form of action must allege a request that such certificate be given, and a neglect or refusal to give the same after such a request has been made.    The only allegation on this subject contained in the complaint is as follows: "But that the defendant railway company has, nevertheless, at all times wrongfully neglected and refused to pay said interest, or any part thereof, and the board of directors thereof have wrongfully neglected and refused to certify that said

interest, or that any interest whatever, has at any time been earned over an l above said expenses; and that the defendants Hewitt and King have at all times participated and aided in such wrongful neglect and refusal." This is not an allegation of a request, and the want of such an allegation renders the complaint demurrable.

2. If the complaint contained a proper allegation of a request for the giving of such certificate, it would not then state a good cause of action against any of the defendants. According to the terms of the proviso contained in each bond, such certificate must be to the effect that the corporation has earned moneys "over and above all expenses, including necessary repairs." The language employed is not "operating" expenses, but "all" expenses. In determining whether the complaint sets forth a cause of action, it must be taken as a whole. As above stated, it contains general allegations of the earning of money which should have been appropriated for the payment of interest; the failure to pay interest; the neglect and refusal of the board of directors to give the certificate; the wrongful and improvident incurring of great and unnecessary expenses, which were charged against and paid out of earnings; and then proceeds to specify how such alleged great and unnecessary expenses have been incurred, namely, in rebuilding the railway of the defendant company, and in building new railway and structures, and in improvidently leasing and operating the Watchung Railway. These are substantially all the specific charges made against the defendants. There is no allegation that the earnings have been appropriated by defendants to their own use, or that they have intentionally done anything wrong. Indeed, one allegation of the complaint, if true, renders it in the highest degree improbable that the defendants Hewitt or King should have wrongfully or improvidently used moneys, applicable to the payment of interest, for any other purpose, and that allegation is that a great majority of both said first and second mortgage income bonds are owned or controlled by the defendants Hewitt and King, or by said firm of Cooper & Hewitt, and by the said Erie Railroad Company. As the two issues of bonds amount to $2,700,000, it is difficult to understand what object Hewitt or King or the Erie Railroad could have in expending moneys, applicable to the payment of interest on the bonds, in the improvement of the defendant railroad. There are several reasons why the allegations in regard to expending the earnings for rebuilding the railway of the defendant company, and building new railway and structures, when taken in connection with the rest of the complaint, do not state a good cause of action against the defendants or either of them. The various allegations that the defendants did certain things "wrongfully" amount to allegations that they did such things "unlawfully," and are merely allegations of conclusions of law. The allegations that the defendants did certain things "improvidently," and that the rebuilding of the railway of the defendant company and the building new railway and structures were not necessary for the maintenance and operation of the defendants' railway, are not allegations of facts, but are merely allegations of the opinion of the plaintiff; and neither such allegations as to the law, nor as to the opinion of the plaintiff, are admitted by the demurrer; and, if such allegations are disregarded, the remaining portions of the complaint do not state a good cause of action. Again, the moneys alleged to have been expended for rebuilding the defendants' railway, and for building new railway and structures, may be considered as covered by the term contained in the proviso inserted in each bond, "all expenses, including necessary repairs." There would be no question on this point if the words "all expenses" stood alone, there being no allegation of bad faith; and, assuming that the words "including necessary repairs" operate as an implied limitation of the scope of the words "all expenses," we still think that, upon these demurrers, the term "all expenses," as so limited, should be regarded as covering the work, which, it is alleged, the de-

fendants have done upon the defendant railway. As in the case of a house or a ship, where a large amount of work is necessarily done to put a railroad, which is old, or was originally badly constructed, or has become very much out of order, into a first-class condition, such work may be, and is, in many cases, with equal propriety and accuracy, termed, indifferently, "repairing," "rebuilding," or "doing new work." Of this kind of work are the replacing old or worn-out rails, ties, culverts, or bridges with new ones; enlarging insufficient stations and shops; improving the roadbed; and renovating and reconstructing engines and cars according to new and improved models. When a large amount of such work has been done, it is a question of the use of terms, and to some extent a matter of opinion, whether it should be called repairing, rebuilding, or doing new work. In common parlance, it is frequently said that the work done upon the house or ship or railroad has been so great that it is practically a new house, ship, or railroad; and yet all the repairs made may have been necessary to put either in a first-class condition.

It was the duty of the plaintiff to set forth in his complaint facts upon which the court could determine whether the work alleged to have been done upon the railway of the defendant company could be considered "necessary repairs." He has not, however, stated any specific facts, but has made general allegations, which are partly merely expressions of opinion, and, so far as they can be regarded as statements of facts, are so vague, indefinite, and uncertain that it is difficult, if not impossible, to determine what they do mean. There is no allegation as to how much of the defendant company's railway has been rebuilt, nor how much new railway, or how many new structures, have been built; and the allegations in regard to the rebuilding of the railway of the defendant company, and in regard to building new railway and structures, might be true, although the actual rebuilding and building, as distinguished from "necessary repairs," were of the most trifling and insignificant amount. These features of the complaint are not aided by section 519 of the Code. In *Clark* v. *Dillon*, 97 N. Y. 373, RUGER, C. J., delivering the opinion of the court, said: "It was formerly the settled rule to construe doubtful pleadings most strongly against the pleader, but this rule has been so far modified by the Code as now to require them to be liberally construed, with a view to substantial justice between the parties. This modification has, however, been held to extend only to matters of form, and not to apply to the fundamental requisites of a cause of action. [Citing authorities.] A construction of doubtful or uncertain allegations in a pleading, which enables a party by thus pleading to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; and, when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. [Citing authorities.] It is in the nature of things that a party who is required to frame his issues for the information of his adversary and the court must be responsible for any failure to express his meaning clearly and unmistakably. While it is competent for a party to move to make the pleadings of his adversary more definite and certain, yet, inasmuch as it is the primary duty of the party pleading to present a clear and unequivocal statement of his allegations, the *onus* of having them made so cannot be cast upon his adversary by his own fault in failing to perform his duty." We think that, applying the rule thus laid down, the allegations of the complaint as to the rebuilding of the defendants' railway, and the building of new railway and structures, taken in connection with the other allegations of the complaint, do not state a good cause of action against either of the defendants, because, upon these demurrers, they cannot be considered as sufficient allegations that the money expended for those purposes was not covered by the term "all expenses, including necessary repairs," contained in the proviso inserted in each bond. So far as the leasing of the Watchung Railroad, and the operating the same, are concerned,

the allegations of the complaint in effect amount to a charge that the board of directors acted improvidently in making such lease, and in operating that road at a loss. It is sufficient to say that the question whether such lease should be made, and 'upon what terms, and whether the road should be operated, was devolved by law upon the board of directors of the defendant railway; and as there is no allegation that they acted in bad faith, or exceeded their powers in this respect, the alleged improvidence in making the lease and operating the road does not, in connection with the other allegations of the complaint, constitute a good cause of action against either of the defendants. The judgment should be affirmed, with costs. All concur.